# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANETTE GAYLORD, an Individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-461-JED-JFJ |
| ) | |
| SPARTAN COLLEGE OF ) | |
| AERONAUTICS & TECHNOLOGY, ) | |
| LLC, a Foreign Limited Liability ) | |
| Company; and JANUS ABCZYNSKI, ) | |
| an Individual, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

**I.    Background**

Plaintiff has worked in the aviation industry for more than four decades and was appointed as a Designated Pilot Examiner (DPE) by the Oklahoma City Flight Standards District Office on January 12, 1989. DPEs are designees of the Federal Aviation Administration (FAA), appointed pursuant to 49 U.S.C. § 44702(d) and 14 C.F.R. § 183.23, and are authorized to examine and evaluate prospective applicants for pilot's certificates or for ratings on existing pilot's certificates. Plaintiff passed examinations by the FAA at least fifty times between her appointment and August 21, 2014.

On October 24, 2013, the Will Rogers Flight Standards District Office (WR FSDO) asked Plaintiff to perform a number of "check-rides" that WR FSDO was unable to perform during a federal government furlough. A "check-ride" is an evaluation flight to determine whether an applicant will be awarded a pilot's certificate or a particular rating on an existing pilot's certificate. Plaintiff agreed to WR FSDO's request and alleges that she performed approximately eighty-one check-rides in addition to those scheduled through her own private business. Plaintiff gave failing

grades to the majority of the eighty-one applicants, including a majority of those who were students of Defendant Spartan Education, L.L.C. (Spartan).[1]

On August 21, 2014, Randy Burke, an FAA Aviation Safety Investigator, informed Plaintiff that her status as a DPE was under investigation and instructed Plaintiff to cease pilot examinations. Burke was the FAA's Principal Operations Inspector overseeing Spartan at the time and is a graduate of Spartan. Burke led the FAA's investigation of Plaintiff. On September 15, 2014, the FAA terminated Plaintiff's DPE appointment. Plaintiff appealed but was unsuccessful.

Plaintiff filed this action in the District Court for Tulsa County, Oklahoma, asserting tort claims against Burke, Spartan, and defendant Janusz Abczynski, a flight instructor employed by Spartan. Plaintiff's petition alleges that the defendants (1) maliciously and wrongfully interfered with her business and her reputation within the aviation industry by making false accusations about her performance as a DPE in order to instigate a fraudulent investigation designed to terminate her DPE; (2) made false statements concerning Plaintiff's abilities in her role as a DPE; and (3) conspired to defame Plaintiff and to wrongfully and maliciously interfere with her business as a DPE. Plaintiff alleges that Spartan was seeking approval for in-house examination privileges, which require certain passage rates. She alleges that her check-ride evaluations were accurate but harmed Spartan's attempts to achieve the required passage rates.

Burke removed the action to this Court, citing original jurisdiction pursuant to 28 U.S.C. § 1331, and removal jurisdiction pursuant to 28 U.S.C. § 1442(a), which governs removal of an action by a federal officer. Plaintiff subsequently dismissed Burke from the proceeding and filed a motion to remand for lack of subject-matter jurisdiction. (Doc. 5). The remaining defendants,

---

[1] According to Spartan, it is incorrectly designated as Spartan College of Aeronautics & Technology, LLC in Plaintiff's petition.

Spartan and Abczynski (hereinafter referred to as Defendants), filed notices of consent to removal and a brief in opposition to Plaintiff's motion to remand. Defendants also filed a motion to dismiss Plaintiff's petition pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 11).

## II. Motion to Remand

Plaintiff contends the federal officer removal statute provided the only proper grounds for removal of this action, and that Burke's dismissal from the case eliminates the basis for federal subject-matter jurisdiction.[2] However, Burke's notice of removal also invoked the Court's original jurisdiction pursuant to § 1331, and Defendants contend that Plaintiff's petition presents a substantial federal question conferring original subject-matter jurisdiction. Defendants also contend that Abczynski is entitled to removal as a federal officer, pursuant to § 1442(a).

### A. Substantial Federal Question Jurisdiction

Under § 1331, the federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A case "arises under" federal law when a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)). The removing party bears the burden of establishing the existence of federal subject-matter jurisdiction. *See Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

---

[2] Defendants do not contest that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are not satisfied here.

3

Defendants characterize Plaintiff's tort claims as a "backdoor" challenge to the FAA's decision to terminate Plaintiff's DPE and contend that her petition raises a "substantial federal question" establishing federal jurisdiction, as set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). In addition, Defendants argue that individual elements of Plaintiff's claims require the application of federal law. For example, to prove her claim for tortious interference with business relations, Plaintiff must show that she possessed a right to maintain her DPE, which is governed by federal law, and must prove Defendants wrongfully caused the FAA to terminate her DPE.[3] Similarly, Plaintiff's defamation claim requires proof of a false and defamatory statement, which Defendants contend requires an evaluation of Defendants' obligations under FAA rules to report suspected violations and participate in investigations.[4] Defendants also contend that to establish causation on all of Plaintiff's tort claims will require "litigating the FAA's investigation and decision-making." (Doc. 13 at 9). Finally, they contend that because Plaintiff must show damages were proximately caused by Defendants, her claims cannot be "extricated" from the FAA's investigation and decision. (*Id.* at 10).

The boundaries of "substantial federal question" jurisdiction are "exceedingly narrow—a 'special and small category' of cases." *Gilmore*, 694 F.3d at 1171 (quoting *Empire*, 547 U.S. at 699). The 'mere need to apply federal law in a state-law claim' will not 'suffice to open the arising

---

[3] To establish tortious interference with business relations under Oklahoma law, a plaintiff must show (1) interference with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged, nor excusable; and (4) the interference proximately caused damage. *Wilspec Techs., Inc. v. DunAn Holding Grp., Co.*, 204 P.3d 69, 74 (Okla. 2009).

[4] *Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058, 1061 (Okla. Civ. App. 2002), cited by Defendants, sets out the elements of defamation under Oklahoma law: (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence, and (4) either the existence of special damage caused by the publication or the actionability of the statement irrespective of special damage.

4

under door.'" *Id.* (quoting *Grable*, 545 U.S. at 313). Rather, to invoke "substantial federal question" jurisdiction, a party "'must show that a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Becker v. Ute Indian Tribe of the Uintah*, 770 F.3d 944, 947 (10th Cir. 2014) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

Plaintiff contends that Defendants have failed to identify any specific federal issues that are necessarily raised by her claims and are in dispute. However, the focus of both parties' briefing is on the third and fourth requirements set forth in *Gunn*. Therefore, the Court will assume, without deciding, that Defendants can satisfy the first two requirements and will proceed directly to the issue of substantiality.

Under *Grable*, substantiality requires "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Gilmore*, 694 F.3d at 1171 (citing *Grable*, 545 U.S. at 313). "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole," rather than its significance to the parties in the immediate case. *Gunn*, 568 U.S. at 260. In *Grable*, the Internal Revenue Service (IRS) seized real property belonging to the plaintiff to satisfy a federal tax debt. The plaintiff received notice of the seizure by certified mail and did not exercise its statutory right to redeem the property within 180 days before the IRS sold the property and granted a quitclaim deed to the buyer. The plaintiff later brought a quiet title action in state court, arguing that the buyer's record title was invalid because the IRS had failed to notify plaintiff of the seizure of his property by personal service, which plaintiff argued was required under the applicable federal statute. The Supreme Court held that the quiet title claim raised an issue of federal law sufficiently substantial to confer federal jurisdiction, noting that whether the notice given to the plaintiff satisfied the statute was "an essential element of its quiet

5

title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Grable*, 545 U.S. at 315. The Court concluded that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court," noting the government's strong interest in satisfying its claims against delinquent taxpayers promptly and with certainty. *Id.* The Court further noted that state title cases raising a similar issue of federal law would be rare and removal would therefore have "only a microscopic effect on the federal-state division of labor." *Id.*

The Court finds *Grable* inapposite here. Plaintiff's claims do not raise federal issues comparable to the construction of the statutory notice provision at issue there. Instead, *Empire*, a subsequent case applying *Grable*, is more relevant. In *Empire*, a deceased federal employee's estate had recovered a settlement in state court with third parties alleged to have caused the decedent's injuries. The administrator of the decedent's health care plan, which was offered through his federal employer, sued the estate in federal court, seeking reimbursement of funds it had paid under the health care plan for the decedent's medical care. The United States, as *amicus*, argued that the reimbursement claim fit within the "substantial federal question" doctrine because the reimbursement provision at issue was governed by federal law. 547 U.S. at 699.

The Supreme Court rejected that argument, noting that "arising under" jurisdiction represents a "special and small category." *Id.* at 699. It noted that *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases." *Id.* In contrast, Empire's reimbursement claim was "fact-bound and situation-specific," because the estate argued that various charges were excessive or duplicative and sought a determination of whether certain services were properly attributed to injuries from the subject accident. *Id.* at 700-701. Despite the federal government's "overwhelming interest in attracting

able workers to the federal workforce, and in the health and welfare of the federal workers upon whom it relies to carry out its functions," the Court concluded that "those interests do not warrant turning into a discrete and costly 'federal case' an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation." *Id.* at 700 (internal citation and quotation marks omitted).

Although Plaintiff's petition alleges that there were deficiencies in the process leading to the termination of her DPE, she has not asserted a claim for violation of her constitutional or federal statutory rights; rather, her causes of action are state-law tort claims. In contrast to *Grable*, where the federal statutory notice provision presented a "nearly pure issue of law," any federal issues here are limited to the specific, factual application of FAA regulations and procedures to the Plaintiff, and therefore are "fact-bound and situation-specific." *Empire*, 547 U.S. at 700-01; *see also Becker*, 770 F.3d at 947 ("[T]he recognition of substantial question jurisdiction does not 'disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'") (internal citations omitted); *cf. Gilmore*, 694 F.3d at 1174 (noting that "[w]hether the Secretary must approve the disposition of restricted Indian personalty is a legal question that does not appear to depend on the specific facts of a case," and that, as in *Grable*, the legal relationship between the parties turned on a federal question). Defendants have not shown any issue implicating a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Gilmore*, 694 F.3d at 1171. Accordingly, the Court does not have subject-matter jurisdiction pursuant to § 1331.

The Court need not determine whether Plaintiff's claims satisfy the first two requirements set forth in *Gunn*, because there can be no "arising under" jurisdiction without a substantial federal question. However, the Court also finds that Defendants have not identified any federal issue that

7

is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Becker*, 770 F.3d at 947. Defendants argue that "uniformity in interpretation of FAA orders is critical and can be achieved only in a federal forum." (Doc. 13 at 10). However, there is no dispute here as to the construction of a federal statute, in contrast to *Grable*, nor have Defendants identified any FAA regulation or order whose meaning is in dispute. The fact that elements of Plaintiff's tort claims may depend on federal law does not by itself warrant a federal forum. *See Empire*, 547 U.S. at 701 (noting that while reimbursement claim may involve federal issue of whether attorney's fees should be included, "it is hardly apparent why a proper 'federal-state balance' would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum. The state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant"). The failure to satisfy this requirement independently precludes the exercise of "arising under" subject-matter jurisdiction.

### B. Federal Officer Removal Jurisdiction

Defendants contend that remand would be improper because Abczynski is entitled to removal in his capacity as a DPE. Under § 1442(a),

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office.

28 U.S.C. § 1442(a) (2018). The federal officer removal statute is to be "liberally construed to give full effect to the purposes for which [it was] enacted," *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) (citing *Colorado v. Symes*, 286 U.S. 510, 518 (1932)), and the "right of removal is absolute for conduct performed under color of federal office," *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

8

Delegees of the FAA may invoke the federal officer removal statute. *See Magnin v. Teledyne Cont'l Motors, Inc.*, 91 F.3d 1424 (11th Cir. 1996).[5] To satisfy the requirements of § 1442(a), a non-governmental defendant such as Abczynski must show that (1) he is a "person" within the meaning of the statute; (2) he was "acting under" a federal officer when engaged in at least some of the conduct alleged in the complaint; and (3) he has a "colorable federal defense" to the claims. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 134 (2d Cir. 2007). Plaintiff does not clearly dispute whether Abczynski qualifies as a "person" within the meaning of § 1442(a), and the Court therefore will assume, without deciding, that Abczynski's position as a DPE satisfies the first requirement. However, Plaintiff contends Abczynski cannot satisfy the requirement that he was "acting under" a federal officer when engaged in the alleged tortious conduct.

To satisfy the "color of office" requirement under § 1442(a)(1), a defendant must establish "a 'causal connection' between the charged conduct and asserted official authority." *Willingham v. Morgan*, 395 U.S. 402, 409 (1969) (citing *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926)). The requirements of a "causal connection" and that a non-governmental defendant was "acting under" a federal officer "tend to collapse into a single requirement: that 'the acts that form the basis for the state or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d at 124 (internal citation omitted). "Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon.

---

[5] Case law applying § 1442(a) to FAA delegees is relatively sparse. *See generally* Fred J. Meier et al., *Federal Officer Removal: Watson Would Fly with FAA Design*ees, 72 J. Air. L. & Com. 485, 512-16 (2007).

Removal will not be proper where a private party establishes only that the acts complained of were performed under the 'general auspices' of a federal officer." *Id.* (internal citations omitted).

In *Willingham*, a prisoner sued the warden and chief medical officer of a federal prison, alleging various injuries. The defendants removed the case pursuant to § 1442(a). The warden submitted an affidavit stating that his only contact with the plaintiff was inside the prison and in the performance of his official duties as warden. Similarly, the chief medical officer filed an affidavit stating that his only contact with respondent was at the prison hospital and was limited to the performance of his official duties. Although the plaintiff argued the officers acted "on a frolic of their own" unrelated to their official duties, his responsive affidavit did not deny either of the officers' statements. 395 U.S. at 407. The Court found it "sufficient for petitioners to have shown that their relationship to respondent derived solely from their official duties." *Id.* Defendants had "sufficiently put in issue the questions of official justification and immunity," and therefore had satisfied the requirement of a "causal connection." *Id.* at 409.

Unlike the defendants in *Willingham*, Abczynski has not provided any affidavit or other evidence establishing a causal connection between his position as a DPE and the conduct alleged in Plaintiff's petition.[6] Rather, Defendants assert that as a DPE, Abczynski "was a representative

---

[6] In *Willingham*, the Supreme Court noted that a defendant seeking removal must file "a short and plain statement of grounds for removal," 28 U.S.C. § 1446(a), and that "'the person seeking the benefit of [the removal provisions] should be candid, specific and positive in explaining his relation to the transaction' which gave rise to the suit," 395 U.S. at 408 (citing *Maryland v. Soper (No. 1)*, 270 U.S. at 35). The Court held that the affidavits submitted with the federal officers' motion for summary judgment could be properly considered as part of the removal petition, although they "should have appeared in the petition for removal." *Id.* at 407 n.3. Because Burke filed the notice of removal, Defendants did not have an opportunity to submit such a statement at that point. However, Defendants cite *Willingham* in their opposition to Plaintiff's motion to remand, and could have included, or sought to include, an affidavit or other statement of grounds for federal officer removal jurisdiction if they wished to do so.

10

and delegee of the FAA," and contend in conclusory fashion that "[b]ased on the allegations in the Petition, Abczynski was acting under delegated federal officer authority from the FAA when he engaged in some or all of the acts alleged by Plaintiff." (Doc. 13 at 14). Plaintiff denies that her petition alleges Abczynski engaged in any tortious conduct in his role as a DPE or in service of the FAA. Rather, she contends that Abczynski acted in service of Spartan.

The petition alleges that Abczynski and the other named defendants (1) made "false accusations about [Plaintiff's] performance as a DPE" in order to instigate a fraudulent investigation designed to terminate her DPE, while "well-aware that Plaintiff made her living as a DPE," (Doc. 2-2 at ¶¶ 33-34); (2) made "false statements concerning Plaintiff's abilities in her role as a professional—namely, as a DPE," *id.* at ¶ 38; and (3) conspired "to defame Plaintiff and to wrongfully and maliciously interfere with her business as a DPE," *id.* ¶ 43. After recounting the FAA's termination of Plaintiff's DPE, Plaintiff's petition makes the following additional allegations that are relevant, or potentially relevant, to Abczynski:

> 24. Defendant Abczynski was appointed to administer check-rides as DPE for Spartan students in Plaintiff's absence. Defendant Abczynski was already employed by Spartan as a flight instructor.
>
> 25. The passage rate of Spartan students drastically increased during Defendant Abczynski's time as DPE.
>
> 26. Defendant Abczynski was investigated in May of 2016 for sub-standard practices as a DPE and ordered to undergo remedial instruction in order to preserve his status as a DPE.
>
> . . .
>
> 28. Numerous contacts within the aviation community in Oklahoma and the surrounding states have contacted Plaintiff to inform her of statements made by Spartan employees indicating that Spartan agents made false reports about Plaintiff to the FAA.
>
> 29. One contact informed Plaintiff that Defendant Spartan's Director of Maintenance, Nathan Loberg, informed him that Spartan instigated the

> investigation due to their displeasure with the number of their students who failed check-ride evaluations with Plaintiff.
>
> 30. Yet another contact informed Plaintiff that Defendant Abczynski contacted him to seek his assistance in instigating an FAA investigation into Plaintiff.

*Id.* ¶¶ 24-26.

It is undisputed that a DPE is authorized to examine and evaluate prospective or current pilots in connection with their pilot's certificate. But absent from these allegations is any indication that Abczynski examined or evaluated Plaintiff in his capacity as a DPE, or that his relationship with Plaintiff derived from his duties as a DPE. Nor does Plaintiff's petition allege that any false or defamatory statement was made respecting her performance as a pilot. Instead, the petition repeatedly alleges that Defendants made false statements about her performance or abilities as a DPE. Moreover, Defendants have not provided any authority or evidence that Abczynski was responsible as a DPE for evaluating Plaintiff in any capacity.

The cases cited by Defendants underscore the lack of a causal connection in this case. In *Weidler v. Prof'l Aircraft Maint.*, the court denied a motion to remand an action for negligence and products liability arising from an airplane crash. No. CV-10-9376, 2001 WL 2020654 (C.D. Cal. May 13, 2011). Plaintiffs alleged that the defendants—including a corporation holding an FAA Air Agency Certificate—acted negligently, carelessly, recklessly, wantonly, and unlawfully regarding the airplane and its components. The court found that the corporation was acting pursuant to its FAA certificate at all relevant times, noting that the relevant statute granted the FAA power to delegate matters relating to examination, inspection, and certification of aircraft components. Accordingly, in *Weidler*, the defendant's alleged tortious conduct had a clear nexus to the authority delegated to it by the FAA. Similarly, the plaintiff in *Magnin* alleged negligent inspection, and wrongful certification of an aircraft's engine as airworthy, against the FAA's designated manufacturing inspection representative for the engine. 91 F.3d 1424. The court cited

*Willingham* in finding removal jurisdiction was proper "because, at least in respect of Magnin's claim that Smith's issuance of the certificate proximately caused the crash, Smith's relationship to the plaintiff 'derived solely from [his] official duties.'" *Id.* at 1428 (citing *Willingham*, 395 U.S. at 409). Here, Abczynski was authorized as a DPE to examine and evaluate prospective pilots. However, there is no evidence that he was acting in that capacity toward Plaintiff at any time, and therefore, the Court finds no basis to conclude that Abczynski's relationship to Plaintiff with respect to her tort allegations derived from his official duties as a DPE.

Defendants contend that Abczynski will assert in his defense that his conduct complied with all applicable FAA regulations and standards, that he complied with his obligations as a delegee, and that he was acting within the scope of his authority as a delegee with regard to the conduct alleged by Plaintiff. Federal officer jurisdiction "is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham*, 395 U.S. at 406-07. However, because Defendants have failed to "sufficiently put in issue" a causal connection between plaintiff's tort claims and Abczynski's responsibilities as a DPE, *id.* at 409, they cannot establish a colorable defense arising out of Abczynski's duty to enforce federal law. Accordingly, Abczynski is not entitled to removal as a federal officer.

### C. Discretionary Retention of Federal Officer Jurisdiction

Defendants contend that the Court should exercise its discretion to retain the remaining claims despite Burke's dismissal. (Doc. 13 at 11 n.6). When a case is properly removed by a federal officer pursuant to section 1442(a)(1), the statute "creates a species of ancillary jurisdiction over the nonfederal elements of the case." *IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health Inc.*, 676 F.2d 152, 158 (5th Cir. 1982). If the federal officer is dismissed, "the district court has a residual ancillary jurisdiction over the state law claims against the nonfederal

defendant. The district court may, in its discretion, decline to exercise this jurisdiction." *Williams v. City of Atlanta*, 794 F.2d 624, 628 (11th Cir. 1986) (citing *IMFC Prof'l Servs. of Fla.*, 676 F.2d at 160); *Gabaldon v. N.M. Coal. to End Homelessness*, No. CIV-17-0473, 2017 WL 3057668, at *1 (D.N.M. May 30, 2017) (proposed findings and recommended disposition, adopted at 2017 WL 3057669) (quoting same); *see also Carnett v. Watts*, No. 15-CV-02437-RM-KMT, 2016 WL 705986, at *2 (D. Colo. Feb. 23, 2016) ("Upon the dismissal of the only basis for a federal court's subject matter jurisdiction, the court has discretion on whether to retain the action or remand the action to state court."). The considerations to be applied are comity, federalism, judicial economy, and fairness to litigants. *Torres v. CBS News*, 879 F. Supp. 309, 321 (S.D.N.Y. 1995) (citing *District of Columbia v. Merit Sys. Protection Bd.*, 762 F.2d 129, 133 (D.C. Cir. 1985)).

The Court finds in its discretion that the exercise of ancillary jurisdiction is not warranted here. As set forth above, Plaintiff's claims arise under state law and implicate no substantial federal issue; accordingly, the principles of comity and federalism weigh against the exercise of federal jurisdiction. Moreover, upon the agreement of the remaining parties in this case, the Court has stayed discovery and other proceedings until the resolution of the pending motions. Therefore, this action is at an early stage, and remand would not sacrifice judicial economy or prejudice any party. *See Merit Sys. Protection Bd.*, 762 F.2d at 1338; *see also Gabaldon*, 2017 WL 3057668, at *1 (recommending remand where action was recently filed and only state-law claims were raised against the remaining nongovernmental defendants); *Gen. Motors Corp. v. Hirschfield Steel Serv. Ctr., Inc.*, 402 F. Supp. 2d 800, 808 (E.D. Mich. 2005) (finding, after dismissal of federal defendant, "no good reason . . . to engage in the endeavor of determining and applying state law when there are no federal claims remaining in this Court, discovery has not yet commenced, and

14

the litigation is in its initial stages"). The Court finds accordingly that this action should be remanded.

## IV. Conclusion

For the reasons set forth herein, Plaintiff's Motion to Remand (Doc. 5) is **granted**. The Court directs the Court Clerk to remand this action to the District Court for Tulsa County, Oklahoma. As a result of this remand order, Defendants' Motion to Dismiss (Doc. 11) is **moot**.

**SO ORDERED** this 26th day of July, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT